UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID E. MALONE-LIPFORD, | CASE NO. 5:18-CV-2712 |
| Plaintiff, | JUDGE SOLOMON OLIVER, JR. |
| v. | Magistrate Judge George J. Limbert |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff David Malone-Lipford ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on April 1, 2019, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence because it failed to explain inconsistencies between medical opinions and the Residual Functional Capacity ("RFC") finding. ECF Dkt. #13. For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's case in its entirety WITH PREJUDICE.

**I.     PROCEDURAL HISTORY**

Plaintiff protectively filed a Title II application for a period of disability and DIB on August 5, 2013. ECF Dkt. #11 ("Tr.")[2] at 100, 128, 199. On September 17, 2013, Plaintiff protectively filed a Title XVI application for SSI. *Id.* at 101, 136, 206. In both of his applications,

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2] All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

1

Plaintiff alleged disability beginning November 23, 2012 due to: osteoarthritis/high blood pressure/depression anger "mana"; high blood pressure; major depression; intermittent explosive disorder; lower back pain; severe shoulder pain; and knee pain. *Id.* at 76, 88, 199, 206. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 86, 98, 114, 127.

On February 10, 2014, Plaintiff requested an administrative hearing. *Id.* at 156, 159. On July 23, 2015, a hearing was held before an ALJ in which Plaintiff, with counsel present, and a vocational expert ("VE") testified. Tr. at 34. The ALJ issued her decision on August 3, 2015, finding Plaintiff not disabled and denying his applications for DIB and SSI. *Id.* at 12-27. Plaintiff requested a review of the hearing decision, and on August 16, 2016, the Appeals Council denied review. *Id.* at 1-4, 9-11.

Plaintiff timely filed suit in the U.S. District Court, Northern District of Ohio on October 20, 2016. ECF Dkt. #13 at 3 (Case No. 5:16-CV-02557); tr. at 847-863. On April 27, 2017, Judge Nugent approved the parties' joint motion to remand this matter for further proceedings. ECF Dkt. #13 at 3 (Case No. 5:16-CV-02557, ECF Dkt. #19); tr. at 864-66. On October 25, 2017, the Administrative Appeals Judge issued a "Notice of Order of Appeals Council Remanding Case to Administrative Law Judge." Tr. at 867-70. The Notice included instructions: (1) to give further consideration to Plaintiff's maximum RFC and (2) to obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base. *Id.* at 743, 870.

Plaintiff appeared at a remand hearing held on March 23, 2018 in Akron, Ohio. ECF Dkt. #13 at 4; Tr. at 772. A new ALJ presided over the hearing, and Plaintiff, with counsel present, and a new VE testified. Tr. at 740-62. The ALJ issued his decision on July 26, 2018, finding Plaintiff not disabled and denying his applications for DIB and SSI. *Id.* at 740-62.

Plaintiff bypassed the Appeals Council and on November 21, 2018, Plaintiff re-filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1; #13 at 5. Plaintiff filed a merits brief on April 1, 2019, and Defendant filed a merits brief on June 14, 2019. ECF Dkt. #s 13, 16. Plaintiff filed a reply brief on June 27, 2019. ECF Dkt. #17.

## II. MEDICAL AND TESTIMONIAL EVIDENCE

Plaintiff alleges that the ALJ's RFC finding is not supported by substantial evidence because the ALJ inadequately considered certain medical opinions of record regarding Plaintiff's mental functioning. ECF Dtk. #13 at 17. Therefore, the undersigned will focus its summary of evidence on the relevant medical records addressing Plaintiff's mental condition.

On September 4, 2013, Plaintiff was brought to the emergency room by his ex-wife due to homicidal ideation and anger issues. Tr. at 331-33. Plaintiff agreed to be admitted for in-patient psychiatry. Plaintiff stated that he had persistent feelings of anger and depression and often thought about harming other people. His sister, with whom he had a close relationship, was recently murdered by her fiancé. He also has a son in Akron from his ex-girlfriend, and he was unable to visit him because of his ex-girlfriend, whom Plaintiff stated verbally abused him. *Id.* at 332. Plaintiff also denied suicidal ideation, but noted that he used to have suicidal ideation as a child, recalling an instance when he played Russian Roulette. *Id.* at 332, 346, 1128. He stated that he smoked marijuana, but denied other substance abuse. He further stated that he lost 3 jobs in a row due to anger problems. *Id.* at 332.

Plaintiff was hospitalized from September 5, 2013 to September 10, 2013. Tr. at 345. He was diagnosed with: depressive disorder, not elsewhere classified; intermittent explosive disorder; suicidal ideation; homicidal ideation; cannabis (marijuana) abuse unspecified use; personal history of noncompliance with medical treatment. *Id.* In the course of his in-patient treatment, Plaintiff expressed that he wanted to kill his mother, father, sister, ex-wife, baby's mother (ex-girlfriend), and anyone else who wronged him all his life or who put him down and laughed at him. *Id.* at 346. He further reported that he was sexually assaulted his by older half sister and her friend when he was 7 or 8 years old, but nobody, including his mother, believed him when he reported it. *Id.* at 347. Plaintiff never saw a therapist until about one month prior to his hospitalization, and he was diagnosed with a mood disorder and prescribed Depakote 500 mg BID. However, Plaintiff was non-compliant with taking his psychiatric medication, and he also reported restless and racing thoughts that constantly bothered him. *Id.*

During an outpatient follow-up visit, Plaintiff reported that his in-patient stay was very beneficial to him. Tr. at 324. He also was taking Depakote, which was benefitting him, and he was transitioning from Seroquel to Abilify. *Id.* Plaintiff also reported post-traumatic stress disorder ("PTSD") symptoms related to his past history of sexual abuse from his older half sister and his feelings of anger towards his other sister's killer, who was currently serving a 15-year prison sentence. *Id.* at 325.

Plaintiff presented for an initial evaluation on May 29, 2014. Tr. at 559-66. He discussed getting angry at the slightest things and had been diagnosed with intermittent explosive disorder. *Id.* at 559. His depression was related to trying to get visitation rights for his child(ren) and the murder of his sister. His symptoms included feelings of depression every day, feeling withdrawn, loss of motivation/interest, trouble sleeping, loss of energy, feelings of worthlessness and guilt, and difficulty concentrating when depressed. He also found it hard to resist aggressive impulses. *Id.* at 559, 564. On mental status examination, Plaintiff was described as severely unkempt, had a mildly anxious mood, and average intellect. *Id.* at 566.

On August 5, 2014, Plaintiff was seen by Dr. Peter Turkson, D.O., to continue psychiatric services at the Community Services of Stark County. Tr. at 727. Plaintiff reported labile, irritable, and explosive moods, anxiety, panic, intrusive thoughts, and hypervigilance. *Id.* His mental status examination reported that Plaintiff was neat, clean, calm, and cooperative. His speech was regular in rate and volume but with poor articulation. His mood was also noted as being mild, pleasant, friendly, and congruent. *Id.* He was diagnosed with mood disorder, PTSD, and cannabis use disorder. *Id.* He also received a Global Assessment of Functioning ("GAF") rating of 45. He was to continue on Valproic Acid ("VPA"), and Abilify. *Id.* at 728. Plaintiff continued to treat with Dr. Turkson over the course of approximately one year, with treatment records reporting consistent symptoms, diagnostic impressions, and treatment. *See* tr. at 714-34.

On July 30, 2015, Plaintiff was first seen by David Swope, M.D. Tr. at 1128-30. Dr. Swope noted he had reviewed Dr. Turkson's progress notes, whom Plaintiff had last seen on June 16, 2015. *Id.* at 1128. Plaintiff reported racing thoughts, mood swings, irritability, and occasional crying spells. Dr. Swope noted he was depressed and irritable on exam, and affect was fair. *Id.*

Dr. Swope diagnosed Plaintiff with mood disorder, not otherwise specified, PTSD, cannabis use disorder, and either borderline intellectual functioning or mild mental retardation. *Id.* at 1129. Dr. Swope assigned a GAF rating of 45. *Id.*

Plaintiff attended an appointment with Dr. Swope on August 27, 2015. Tr. at 1125-27. His mood worsened due to the denial of his disability claim. *Id.* at 1125. On exam his mood was depressed and irritable, he had some insomnia, and fleeting suicidal ideation. *Id.* Dr. Swope found the same diagnoses as his prior exam and he assigned a GAF of 40. *Id.* at 1126.

On October 6, 2015, neuropsychologist Dr. James Lyall performed a psychological evaluation on Plaintiff. Tr. at 1031. Plaintiff reported that he has a long history of temper control issues and anger control issues. *Id.* at 1031-32. Plaintiff also stated that he has worked a number of temporary service jobs, but that he has been unable to work since 2012 because of right shoulder difficulties. *Id.* at 1032. Dr. Lyall administered a Wechsler Adult Intelligence Scale - IV (WAIS-IV) test for which Plaintiff scored from the low average to extremely low average range. *Id.* at 1032-33. Dr. Lyall's vocational projection opinion stated that Plaintiff, from a social point of view, would have difficulty getting along with peers and supervisors, and he would tend to be very sensitive and easily upset by his environment. *Id.* at 1034. Dr. Lyall stated that due to his clear history of acting out behavior, Plaintiff would probably do much better in a job that did not require much social contact. *Id.*

Dr. Swope saw Plaintiff again on October 8, 2015. *Id.* at 1122. On exam his mood was mildly depressed, but irritable, and his affect was blunted. *Id.* Dr. Swope assigned a GAF rating of 45. *Id.* at 1123.

Plaintiff began treatment with Anita Ciccarelli, PMHNP on January 26, 2016. Tr. at 1118-21. He admitted to anxiety, panic attacks, and depression, including mood fluctuations ranging from depression to anger and irritability. *Id.* at 1118. He denied having suicidal and homicidal ideation. *Id.* Nurse Ciccarelli diagnosed Plaintiff with major depressive disorder, single episode, unspecified, ruled out bipolar disorder, and assigned a GAF rating of 43. *Id.* at 1120.

On July 12, 2016, Plaintiff reported that he was living with his mother and nephews, ages 6 and 12, and they helped distract him during the day. Tr. at 1108. Although he was getting 8

hours of sleep a night, he reported problems staying awake for over 24 hours caused by racing thoughts. He had been visiting his sister's grave and dealing with her loss. He also reported that he was not getting along with family and continued to have anxiety while out in public or crowded places. *Id.* On exam, Plaintiff displayed anxious and depressive traits and full affect. *Id.* at 1109. Nurse Ciccarelli assigned him a GAF rating of 43. *Id.* at 1110.

On August 23, 2016, Plaintiff presented to the Crisis Center of Stark County for inpatient psychiatric placement at the referral of his doctors at CommQuest due to depression and suicidal thoughts. Tr. at 1054. He reported not taking his medications for the past 8 days due to an inability to sleep. *Id.* On mental status exam, Plaintiff exhibited a depressed and anxious mood, difficulty focusing, difficulty shifting attention, and minimal insight into his condition, but his exam was otherwise unremarkable. *Id.* at 1055. He was discharged on August 27, 2016 after his suicidal ideations had passed and he returned to a stable condition. *Id.* at 1070.

On September 7, 2016, Plaintiff presented to Nurse Ciccarelli with little eye contact and racing/tangential thoughts. Tr. at 1105. He exhibited anxiety and increased depression on exam, as well as constricted affect. *Id.* He reported he no longer had suicidal or homicidal ideations. *Id.* Again, Nurse Ciccarelli assigned him a GAF rating of 43. *Id.* at 1107.

On October 19, 2016, Plaintiff presented after missing his prior two appointments, reporting that his cousin, whom he considered a brother, was just murdered. Tr. at 1102. He stated that he was rarely alone and spoke of family and friends' involvement in his daily life. *Id.* He exhibited anxiety and increased depression on exam, as well as constricted affect. *Id.* On February 8, 2017, a mental status exam showed less anxiety and decreased depression, but he had a paranoid thought process, believing people were plotting against him. *Id.* at 1099-1100.

On October 24, 2017, Plaintiff discussed his difficulties in school but no official testing was done in childhood. Tr. at 1347. He was suspected to have a learning disability. He continued to be close with his ex-wife, but admitted it was also difficult. He reported experiencing anxiety in crowds and racing thoughts that interfered with his sleep. His thought process exhibited some paranoia, "much a result of being molested by his sister at age 7." *Id.* On exam, Plaintiff exhibited a tangential thought process, depressed mood, and constricted affect, but was otherwise

unremarkable. *Id.* at 1348. Nurse Cicccarelli diagnosed Plaintiff with: Bipolar I disorder, current or most recent episode depressed, unspecified; PTSD; and cannabis use disorder, mild. *Id.* at 1349. He was assigned a GAF rating of 45. *Id.* at 1350.

On December 4, 2017, Plaintiff presented to Nurse Ciccarelli, who noted that Plaintiff's living situation was stable and supportive as he was living in an apartment with his ex-wife until her apartment was ready. Tr. at 1352. Plaintiff anticipated difficulty with being alone. Upon examination, Plaintiff exhibited a circumstantial thought process, loose associations, depressed mood, congruent affect, and limited insight and judgment. *Id.*

On January 10, 2018, Plaintiff reported much mood fluctuation. Tr. at 1355. He reported added stressors due to family circumstances. He was not taking his medications consistently due to traveling to Cleveland to care for his mother and trying to get authorities involved with issues with his son. He denied suicidal ideation but admitted to homicidal ideation due to irritability, but he had no plan. *Id.* On exam, Plaintiff exhibited a circumstantial thought process, occasionally loose associations, tangential stream of thought, depressed and congruent mood, poor and erratic sleep, and limited insight and judgment. *Id.* at 1356.

### III. **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On July 26, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 740-62. The ALJ stated that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. *Id.* at 745. He further found that Plaintiff had not engaged in substantial gainful activity since November 23, 2012, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the following severe impairments: degenerative changes of the bilateral shoulders; status post right rotator cuff repair; obesity; hypertension; borderline intellectual functioning; and affective dysfunction variously diagnosed to include mood, depressive, anxiety, bipolar, post-traumatic stress and attention deficit hyperactivity disorders. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 746.

After considering the record, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except for the following limitations: can never crawl or climb ladders, ropes, or scaffolds; must avoid the use of moving machinery, commercial driving, and unprotected heights; can frequently stoop, kneel, crouch, and reach overhead with his dominant left upper extremity; can occasionally climb ramps/stairs and reach overhead with his non-dominant right upper extremity; mentally, he can perform unskilled (SVP 1-2) tasks in an environment free of fast-paced production requirements and involving only routine workplace changes; and can tolerate frequent interaction with supervisors and occasional interaction with the general public, but his contact with others must be "superficial," defined as not involving tasks of arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others. Tr. at 748.

The ALJ then stated that Plaintiff was unable to perform any past relevant work. Tr. at 760. He further found that Plaintiff was a younger individual age 18-49 on the alleged date of disability, had at least a high school education, and is able to communicate in English. *Id.* The ALJ noted that transferability of job skills was not an issue in this case because the Plaintiff's past relevant work is unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff can perform. *Id.* at 761. Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 23, 2012 through the date of his decision, July 26, 2018. *Id.* at 761-62.

**IV.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and

8

>    416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without

the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    LAW AND ANALYSIS

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ inadequately considered the medical opinions of record regarding Plaintiff's mental functioning. ECF Dkt. #13 at 17. Plaintiff avers that the evidence established Plaintiff's need to work independent of other staff in the workplace and that the ALJ's RFC finding does not address this specific limitation. *Id.* Plaintiff supports his argument by pointing out four relevant opinions: State agency psychological consultants Dr. Rudy and Dr. Johnston, treating psychiatrist Dr. Swope, and examining neuropsychologist Dr. Lyall. *Id.* at 17-19. For the following reasons, the undersigned recommends that the Court find that the ALJ properly considered the medical opinions of record and that the ALJ's findings are supported by substantial evidence.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. § 404.1545(A)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. §§ 404.1545(c); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009); SSR 96-5p, 1996 WL 374183, at *5. SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC

assessment must identify the claimant's functional limitations and restrictions and assess his work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, a need for a structured living environment, and work evaluations. *Id*. As Plaintiff correctly pointed out, SSR 96-8p also states: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at *7.

Here, each of the four medical opinions opined that Plaintiff should have limited social interaction with co-workers. Specifically, both State agency psychological consultants noted that Plaintiff would "work best independent of other staff." Tr. at 84 (Dr. Rudy), 96 (Dr. Rudy), 111 (Dr. Johnston), 124 (Dr. Johnston). Treating psychiatrist Dr. Swope filled out a mental questionnaire assessment of Plaintiff's ability to do work-related activities. *Id.* at 736-37. On August 27, 2015, Dr. Swope opined, in relevant part, that Plaintiff has a markedly limited ability: relating to other people; responding appropriately to co-workers; and behaving in an emotionally stable manner. *Id.* On October 6, 2015, examining neuropsychologist Dr. Lyall opined that:

> [Plaintiff] would have difficulty getting along with peers and supervisors in a job environment. He would tend to be very sensitive and easily upset by his environment. He has a clear history of acting out behavior and probably would do much better in a job that did not require much social contact.

Id. at 1034, 1232.

In his decision, the ALJ addressed each of the aforementioned opinions. First, the ALJ considered Dr. Swope's treatment notes and opinions. Tr. at 755-56. He specifically mentioned Dr. Swope's opinion that Plaintiff had marked limitations in his work-related mental–particularly social–functioning. *Id.* at 755 (citing tr. at 735-39, 1099-1131). The ALJ afforded Dr. Swope's opinion little weight because it did not have indicia of reliability contemplated by SSR 96-2p, was not well-supported, and was not consistent with the other substantial evidence of record. Id. at 755-56.

11

Second, the ALJ considered Dr. Lyall's evaluation and opinion. Tr. at 756-57. The ALJ considered Dr. Lyall's opinions, including his conclusion that Plaintiff's diagnoses "would result in vocational 'problems in any sort of complicated job and/or [in] a job that required any sort of significant social skills,' such that the [Plaintiff] 'would do much better in a job that did not require much social contact.'" *Id.* at 756 (quoting tr. at 1228-33). The ALJ "accorded Dr. Lyall's 'overall' and more specific opinion weight in the determination of this matter," but afforded limited weight to his ascribed GAF score of 50. *Id.*

Finally, the ALJ considered the opinions of State agency psychological consultants Dr. Rudy and Dr. Johnston. Tr. at 759. The ALJ noted that both consultants concluded from separate analyses of the record that Plaintiff's mental impairments resulted in no marked or extreme functional deficits and there was no evidence that supported marked or extreme deficits in his work-related mental functioning. *Id.* (citing tr. at 76-99, 102-27). The ALJ agreed that Plaintiff's mental impairments were not shown by longitudinal clinical or other objective findings to cause more than moderate overall limitations in his work-related functioning, and he therefore accorded their opinions "some weight." *Id.*

The ALJ accounted for Plaintiff's mental limitations in his RFC determination. Tr. at 748. Specifically, the ALJ found that Plaintiff can perform unskilled (SVP 1-2) tasks in an environment free of fast-paced production requirements and involving only routine workplace changes. *Id.* He also found that Plaintiff *can tolerate frequent interaction with supervisors and occasional interaction with the general public*, but his contact with others must be "superficial," defined as not involving tasks of arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others. *Id.* (emphasis added).

As a collateral matter, Plaintiff argues that the ALJ was required to explain the weight he afforded to the opinions of the State agency psychological consultants Dr. Rudy and Dr. Johnston. ECF Dkt. #13 at 18-19 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). State agency consultants are highly qualified specialists and experts in Social Security disability evaluation. SSR 96–6p, 1996 WL 374180. The regulations require that "[u]nless the treating physician's

12

opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). An ALJ is not required to explain why he favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006). In addition, ALJs are not bound by the findings of state agency psychologists, "but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-8p. The regulations require an ALJ to "consider" all the medical opinions in the record as well as "evaluate" them considering the factors of 20 C.F.R. §§404.1527(c) and 416.927(c). 20 C.F.R. §§ 404.1527(b),(c), 416.927(b)(c). These factors include the examining relationship; the treatment relationship, including the length of the treatment relationship and the frequency of examination as well as the nature and extent of the treatment relationship; supportability; consistency; specialization; and other relevant factors that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

As noted above, the ALJ considered the opinions of Drs. Rudy and Johnston. *See* tr. at 759. The ALJ also evaluated these opinions in light of the aforementioned factors. 20 C.F.R. §§ 404.1527(b),(c), 416.927(b)(c). Under the supportability and consistency factors, the ALJ noted that the State consultants conducted their own separate analyses of the record through early 2014 and compared it to subsequent, longitudinal, and other objective evidence documented since that time. Tr. at 759. The ALJ implicitly considered the specialization factor by recognizing that the State consultants each made their conclusions from separate analyses of the record and used historical evaluative criteria and by ultimately affording their opinions "some weight." *Id.* Therefore, the undersigned recommends that the Court find that the ALJ did not err in his evaluation of the State agency psychological consultants' opinions.

Importantly, Plaintiff does not challenge the actual weight given to any medical opinion, but rather he challenges the RFC determination. ECF Dkt. #13. Defendant agrees that there is no dispute that Plaintiff had difficulty getting along with others. ECF Dkt. #16 at 3. Instead, the instant dispute focuses on whether the ALJ's RFC finding sufficiently accounted for Plaintiff's social limitations, specifically his need to work independent of other staff or co-workers. ECF Dkt. #13 at 17. Plaintiff acknowledges that the RFC finding includes specific limits of social interaction with supervisors and the general public, but notes that it is silent with regard to co-workers. *Id.* at 17, 19. Plaintiff characterizes this silence as a contradiction of the medical opinions, which requires the ALJ to provide an explanation for the contradiction. *Id.* at 19; ECF Dkt. #17 (citing SSR 96-8p).

The undersigned recommends that the Court find that Plaintiff's argument is without merit. "[A]n ALJ is not required to adopt every facet of an opinion, even when assigning it great weight." *Maki v. Comm'r of Soc. Sec.*, No. 1:18 CV 798, 2019 WL 3082309, at *7 (N.D. Ohio July 15, 2019); *see Reeves v. Comm'r of Soc. Sec.*, 618 Fed.Appx. 267, 275 (6th Cir. 2015) (unpublished) ("Although the ALJ gave great weight to [a physician's] opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record."); *Smith v. Colvin*, No. 3:13-CV-00776, 2013 WL 6504681, at *11 (N.D. Ohio Dec. 11, 2013) ("[T]here is no requirement that an ALJ accept every facet of an opinion to which he assigns significant or substantial weight. Rather, the relevant regulations require only that an ALJ explain the general weight given to the opinions of nonexamining physicians."); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) (unpublished) (An ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *see also Martin v. Comm'r of Soc. Sec.*, 658 Fed.Appx. 255, 259 (6th Cir. 2016) (unpublished) ("Martin protests the ALJ's lack of explanation as to why Martin's marked impairment in interacting with the general public—as found by Dr. Joslin—and his moderate to marked impairment in his ability to sustain concentration—as found by Dr. Rutledge—were not explicitly incorporated into Martin's RFC. But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions.").

The ALJ fully considered each of the medical opinions and afforded each of them less than controlling weight. Tr. at 755-57, 759. As such, the ALJ was not required to adopt every aspect of each of the four medical opinions for which he afforded less than controlling weight. Notably, Plaintiff does not dispute the weight afforded to any of the medical opinions. *See* ECF Dkt. #s 13, 17. Regardless of the weight he afforded, the ALJ still specifically took Plaintiff's social limitations into account in his RFC finding, despite the limitations being directed more towards supervisors and the general public as opposed to a specific limitation concerning co-workers. *Id.* at 748. The ALJ also made a blanket finding that Plaintiff's contact with others must be "superficial," defined as not involving tasks of arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others. *Id.* The ALJ's RFC finding does not *contradict* the medical opinions about social interaction, contrary to Plaintiff's averments.

Additionally, any error would be harmless because Plaintiff has not shown, nor can the Court find, how Plaintiff was prejudiced. *See Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L. Ed. 2d 532 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 541 546–47 (6th Cir. 2004) ("An agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses.'") (emphasis added) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir.1983)). Therefore, the undersigned recommends that the Court find that the RFC finding is supported by substantial evidence because the ALJ properly considered the medical opinions concerning Plaintiff's mental functioning.

### **VII.  CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.


Date: January 27, 2020              */s/George J. Limbert*
                                    GEORGE J. LIMBERT
                                    UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).